If, therefore, the plaintiff will stipulate to reduce the verdict to that amount, the judgment at the reduced amount and the order will be affirmed, without costs in this court. Otherwise the judgment and order appealed from must be reversed, and a new trial ordered, with costs to abide the event.

LAUGHLIN and HOUGHTON, JJ., concur.

INGRAHAM, J. I think the judgment should be reversed, and a new trial ordered.

CLARKE, J., concurs with INGRAHAM, J.

---

MACKEY v. INTERURBAN ST. RY. CO.

·(Suprème Court, Appellate Division, First Department. November 23, 1906.)

1. EVIDENCE—EXPERT TESTIMONY—COMPETENCY.

In an action for personal injuries, where a physician testified as to the condition of plaintiff three years after the injury, his testimony as to whether the condition described could result from a fall was inadmissible.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, §§ 2336, 2356.]

2. TRIAL—RECEPTION OF EVIDENCE—STRIKING OUT TESTIMONY.

In an action for personal injuries, where a physician testified as to the condition of the plaintiff three years after the injury, and there was no evidence sufficient to show that it was the result of the injury, the testimony should have been stricken out on motion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, § 233.]

Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Mary Mackey against the Interurban Street Railway Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Edward D. O'Brien, for appellant.
David W. Rockmore, for respondent.

INGRAHAM, J. The plaintiff was injured on the 15th day of April, 1902, on Sixth avenue, between Forty-Fifth and Forty-Sixth streets, in the city of New York, while alighting from one of the defendant's cars. The action was commenced on the 26th day of June, 1903. The plaintiff was attended by a physician immediately after the accident, who found her in a nervous condition, with pains in the back of her head. The physician found what he called "a couple of points of tenderness along her spine, but that was all." He treated her about a month, visiting her 12 or 15 times. He testified that he did not find any evidence of contusion. A physician, who had practiced about 10 years, was then examined by the plaintiff. He first saw the plaintiff

in November, 1905, a short time before the trial, about 3½ years after the accident. He testified:

That he found many sensitive points along the spine, especially in the lumbar and lower dorsal regions. That the patient showed a slight degree of mental confusion. This was objected to, and counsel for the defendant moved to strike it out; but the court denied the motion, and the defendant excepted. That he also found a disturbance of the heart, a dragging and falling of the abdominal organs connected with the intestines, and that plaintiff's right kidney was what was called a "floating kidney." He described this condition as follows:

"The kidneys are usually held in place by the surrounding fat and other tissues holding the kidneys in place. If, for any cause, any of this fat is obstructed, and the ligamentary tissues are not holding it in place, or in any way becomes stretched, it becomes a moving kidney."

That when the fat and tissues do not become exaggerated, so that the kidneys become less firm, it will float forward, and becomes what is known as the "floating kidney." He then described several causes for this condition, one of which he says "are blows direct or indirect"; that this condition "is due to its connection with the nervous system, and reflex areas, known as the 'sympathetic nervous system,' it may give rise to most any and every type of vaso-motor disturbance"; and that he found the plaintiff suffering from neurasthenia. He was then asked:

"Can you state with reasonable certainty whether or not the condition in which you found the plaintiff could result from a fall?"

This was objected to, and to this objection the court answered, "all right." Whereupon the witness answered, "I can," and the witness was then asked, "Will you state it, with reasonable certainty?" to which the witness answered, "I will," and the defendant excepted. I think this was an exception to the ruling on the former objection to the question whether the witness could state with reasonable certainty whether or not the condition in which he found the plaintiff "could result from a fall." I think that question was clearly objectionable, and it was error to allow the witness to answer it. The witness was then asked to "state it," and he answered:

"The injuries that the patient is now suffering from and the condition that I found her in at the time of my examination could have come from such a fall as the plaintiff had."

This statement of the witness does not seem to have been in answer to any particular question, except the question to which the defendant had objected and to the ruling of the court allowing it. It must be remembered that this witness had not seen the plaintiff until 3½ years after the accident, finding then a condition of which the physician that had examined her immediately after the accident had discovered no indication, and all that he could say was that the condition that he discovered 3½ years after the accident could have come from such a fall as the plaintiff had. After the witness had answered several other questions, all of which the defendant moved to strike out, the court said to counsel for the plaintiff, "Do you want it to stay?" to which counsel answered, "Yes," when the court denied the defendant's

motion to strike out this testimony, to which the defendant excepted. In the absence of other testimony connecting the physical condition first discovered 3½ years after the accident with the accident itself, I think it clearly error to allow a medical expert to testify that the condition could have been caused by the accident. Conceding that it could have been caused by the injury, it is no evidence to justify a finding that it was, and it allows the jury to find a verdict upon what is pure speculation and not evidence.

It having appeared that the opinion of the witness was a mere speculation, the defendant's counsel again moved to strike out all the testimony in regard to the neurasthenia and floating kidney, on the ground that the plaintiff had failed to connect it, or failed to show that it was the result of the injury at the time of the accident. This motion was denied, and the defendant excepted. I think this motion should have been granted. In the charge to the jury the learned trial judge left it to them to say whether or not this condition testified to by this witness was caused by the accident, and, if they found it was, to award damages for it. There was no suggestion in the complaint that the plaintiff was suffering from a floating kidney, or from any nervous complaint, and the exception to this evidence and the submission of that question to the jury requires us to reverse the judgment. This question was discussed and decided by this court in the case of Newton v. N. Y., N. H. & H. R. R. Co., 106 App. Div. 415, 94 N. Y. Supp. 825, where it was said:

"What the law requires is evidence that a condition for which a recovery is sought was caused by an injury to the plaintiff, caused by a negligent act of the defendant, and, where a physical injury results, the law allows an expert to testify that in his opinion the condition was with reasonable certainty caused by the act of the defendant; but there must be some connection between a physical injury caused by the negligent act and the condition for which a recovery is sought. The opinion of a witness that such a condition could result from such an injury is not proof of the fact that the condition did result from it. The evidence, therefore, of these physicians, which was objected to by the defendant, and which was admitted, and to which the defendant excepted, that this condition of the plaintiff's testator could have been caused by a mental shock experienced by him in consequence of what happened at the time of this collision, was incompetent evidence as not tending to prove the fact, the burden of proving which was upon the plaintiff, that the condition that the physician found the plaintiff in four months after the accident had any relation to a physical injury that the plaintiff's testator received at the time of this collision."

See, also, Maimone v. Dry Dock, E. B. & B. R. R. Co., 58 App. Div. 383, 68 N. Y. Supp. 1073; Higgins v. United Traction Co., 96 App. Div. 69, 89 N. Y. Supp. 76; Grace v. Fassott, 67 App. Div. 443, 73 N. Y. Supp. 906.

I think, therefore, that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur except LAUGHLIN, J., who dissents.